## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MARK A. MERAZ,

       Petitioner,

v.                                      CIV  NO. 04-1317 JH/ACT

ROBERT ULIBARRI, Warden, and
PATRICIA A. MADRID,

       Respondents.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

    **THIS MATTER** comes before the Court on Petitioner Mark A. Meraz's Application for a Writ of Habeas Corpus. (Doc. No. 1). Petitioner filed his Application on November 22, 2004. The Respondents filed an Answer, with accompanying Exhibits, on January 3, 2005.  (Doc. No. 10).   The United States Magistrate Judge, having reviewed the Application, the Answer, the accompanying Exhibits, and the relevant law, recommends that the Application for a Writ of Habeas Corpus be DENIED ON THE MERITS.  Petitioner has also moved for the appointment of counsel to represent him in these proceedings.  (Doc. No. 3).  As further explained in this opinion, the United States Magistrate Judge recommends that the Motion for Appointment of Counsel be DENIED.

<u>PROPOSED FINDINGS</u>

<u>PROCEEDINGS AND PLEADINGS</u>

1. Petitioner is currently incarcerated in a New Mexico correctional facility pursuant to a Judgment, Order and Commitment of the Third Judicial District Court, County of Doña Ana, State of New Mexico, entered of record on June 20, 2000. (Answer, Exhibit A). Petitioner is proceeding *pro se* and *in forma pauperis*.

2. Petitioner was tried by a jury and convicted of Murder in the First Degree. He was sentenced to life imprisonment. (Answer, Exhibit A).

3. Petitioner filed his Notice of Appeal to the Supreme Court of New Mexico raising five issues:

> A. The trial court erred in denying a motion for directed verdict at the close of the state's evidence.
>
> B. The trial court failed to consider the sufficiency of the evidence at the close of all evidence.
>
> C. The trial court erred by failing to consider a motion for judgment not withstanding the verdict before sentencing defendant.
>
> D. The trial court erred by allowing defendant's testimony to be impeached with evidence of a juvenile adjudication.
>
> E. The trial court erred in allowing grand jury testimony of two witnesses who testified at trial inconsistently to be played for the jury and introduced as substantive evidence.

4. The first three issues were consolidated in the Petitioner's Brief in Chief and presented

as an argument that the State presented insufficient evidence to sustain Petitioner's conviction for Murder in the First Degree.  (Answer, Exhibit E).  The State filed its Answer Brief and the Supreme Court of New Mexico issued its decision affirming the Petitioner's conviction. (Answer, Exhibits F and G).  The state Supreme Court addressed each of Petitioner's issues on the merits and ruled against him.

5.   Petitioner filed a timely state Petition for Writ of Habeas Corpus raising four claims:

A.  Petitioner was denied effective assistance of counsel.  Petitioner supported this claim with seven arguments:

1)  the trial attorney failed to have the handgun tested for fingerprints;

2)  the trial attorney failed to obtain time cards from the Days Inn where Petitioner, victim and one witness worked;

3)  the trial attorney failed to move for a mistrial when the victims' family and friends wore red ribbons in the courtroom.  (Out of the presence of the jury, the trial judge ordered those wearing the ribbons to remove them which they did.);

4)  the trial attorney failed to have the t-shirt worn by the Petitioner on the night of the murder tested for blood or brain matter;

5)  the trial attorney failed to challenge the testimony of the State's autopsy professional who testified that she found no soot or stippling on the victim;

6)  the trial attorney failed to call any character witnesses on behalf of the Petitioner; and

7)  the trial attorney erred when he failed to request a jury instruction

concerning Petitioner's inability to form intent because of Petitioner's

intoxication.

B.  The State failed to disclose to Petitioner's defense counsel the existence of

evidence favorable to the Petitioner.

C.  Petitioner's conviction was obtained by the use of coerced witness statements.

D.  The trial court erred in not granting the Petitioner's motion for a mistrial when

statements made by witnesses exposed them to potential charges of perjury

without benefit of counsel.  (Answer, Exhibit I).

6.  New Mexico District Court Judge Bridgforth, who had not been the trial judge,

reviewed the Petition and the trial transcript.  The judge addressed each argument in the

ineffective assistance of counsel claim, addressed the exculpatory evidence claim (but mis-read the

Petitioner's arguments to apply to the victim's t-shirt) and addressed the last two claims about the

witnesses' statements.  Judge Bridgforth denied the Petition on the merits finding the first two

claims to be without merit and the latter two claims to have been decided against the Petitioner by

the New Mexico Supreme Court.  (Answer, Exhibit J).

7.  Petitioner filed a timely Petition for Writ of Certiorari with the Supreme Court of New

Mexico raising two claims.  The first claim was the claim of ineffective assistance of counsel with

seven supporting arguments, as raised in Petitioner's first Petition for Writ of Habeas Corpus.

The second claim raised the issue of the Petitioner's t-shirt and whether the State had withheld

this potentially exculpatory evidence.  (Answer, Exhibit K).

8.  The Supreme Court asked the State to respond to the first of the ineffective assistance

of counsel arguments and the issue of Petitioner's t-shirt as potentially exculpatory evidence.

(Answer, Exhibit L).  The State responded but, like Judge Bridgforth, mis-read Petitioner's argument about the t-shirt and addressed whether the victim's t-shirt was exculpatory evidence. (Answer, Exhibit M).

9.  Upon considering the Response, the Supreme Court denied the Petition for Writ of Certiorari.  (Answer, Exhibit N).

10.  Petitioner timely filed this federal Petition for a Writ of Habeas Corpus on November 22, 2004.  (Doc. No. 1).

<u>DISCUSSION</u>

11.  The federal statute governing applications for a writ of habeas corpus, 28 U.S.C. §2254, states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.

12.  Petitioner raised five claims in his federal Petition for a Writ of Habeas Corpus:

> A. The trial court erred in allowing Petitioner's testimony to be impeached with evidence of a juvenile adjudication.
>
> B.  The trial court erred in allowing grand jury testimony to be played to the jury and used as substantive evidence.

C.  There was insufficient evidence to support Petitioner's conviction of Murder in the First Degree.  The three arguments in support of this claim are:

a.  the trial court erred in denying Petitioner's motion for a directed verdict at the close of the State's evidence;

b.  the trial court failed to consider all the evidence at the close of the State's case; and

c.  the trial court erred when it did not grant the Petitioner's motion for a judgment notwithstanding the verdict.

D.  Petitioner received ineffective assistance of counsel.  The Petitioner supported this claim with seven arguments:

a.  the trial attorney failed to have the handgun tested for fingerprints;

b.  the trial attorney failed to obtain time cards from the Days Inn where Petitioner, victim and one witness worked;

c.  the trial attorney failed to move for a mistrial when the victims' family and friends wore red ribbons in the courtroom.

d.  the trial attorney failed to have the t-shirt worn by the Petitioner on the night of the murder tested for blood or brain matter;

e.  the trial attorney failed to challenge the testimony of the State's autopsy professional who testified that she found no soot or stippling on the victim;

f.  the trial attorney failed to call any character witnesses on behalf of the Petitioner; and

g.  the trial attorney erred when he failed to request a jury instruction

6

concerning Petitioner's inability to form intent because of Petitioner's intoxication.

E.  The State withheld potentially exculpatory evidence, the Petitioner's t-shirt.

13.   The first three claims were raised by the Petitioner on his direct appeal.  They were addressed by the Supreme Court of New Mexico and found to be without merit.

14.  The latter two claims - the claim of ineffective assistance of counsel and the claim of withholding of potentially exculpatory evidence - were raised by the Petitioner in his state habeas corpus pleadings.  These two claims were addressed by the New Mexico district judge and were denied on the merits.  The New Mexico Supreme Court declined review of these two claims after reviewing further briefing.

15.  Petitioner has exhausted all of his claims in the state courts below and has received a ruling on the merits of his claims.[1]  This Court must determine first whether each claim raises a violation of a federal constitutional right.  If it does, this Court must then determine whether the state court decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, or whether the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.

THE FIRST TWO CLAIMS ADDRESS ISSUES OF STATE RULES OF EVIDENCE AND ARE NOT REVIEWABLE IN A FEDERAL HABEAS CORPUS PETITION

---

[1]Through no fault of his own, Petitioner was unable to obtain a ruling on the merits of one claim and one argument supporting his claim of ineffective assistance of counsel because the state district court judge who ruled upon Petitioner's state application for the writ of habeas corpus mis-read the Petitioner's argument.  Both claims involve the t-shirt Petitioner was wearing the night of the murder.

16. This Court's inquiry is restricted to a review of Petitioner's claims that he is in custody pursuant to a judgment of a New Mexico state court that violates the Constitution of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

17.  Petitioner's first claim is that the trial court allowed evidence of a juvenile adjudication to be used to impeach him.  The New Mexico Supreme Court addressed this issue and held that it was an evidentiary matter under New Mexico Rules of Evidence 11-403. Petitioner testified at trial.  The Supreme Court noted that by testifying, Petitioner put his character for honesty at issue.  New Mexico law recognizes that the crime of robbery is a crime of dishonesty and can be used to impeach the Petitioner's character for honesty.  *State v. Day*, 94 N.M. 753, 759, 617 P. 2d 142, 148 (1980). Reviewing the exchange between the Petitioner and the State, the Court found that the juvenile adjudication had not been brought forth, but that the Petitioner was questioned only about the specific instance of conduct underlying the adjudication. *See, e.g., State v. Worley*, 100 N.M. 720, 676 P.2d 247 (1984).  In New Mexico, the conduct underlying a juvenile adjudication may be used for impeachment purposes as long as the juvenile adjudication itself is not mentioned. *Id.*

The Supreme Court reviewed the decision by the trial court to allow the introduction of this evidence for an abuse of discretion under New Mexico Rule of Evidence 11-403.  The Court held that the trial judge did not abuse his discretion in allowing the specific conduct of armed robbery to be placed into evidence.

18. A claim that New Mexico courts misinterpreted the New Mexico Rules of Evidence is not grounds for habeas relief.  *Morris v. Burnett*, 319 F. 3d 1254, 1268 (10th Cir. 2003); *Scrivener v. Tansy*, 68 F. 3d 1234, 1238 (10th Cir. 1995), *cert. denied*, 516 U.S. 1178 (1996).

Therefore, this claim - that the Supreme Court of New Mexico erred in reviewing the trial court's evidentiary ruling - does not state a claim that Petitioner is in custody pursuant to a judgment of a state court that violates the Constitution of the United States.

19.  Petitioner's second claim is that the trial court erred in allowing grand jury testimony to be played to the jury and used as substantive evidence.  The New Mexico Supreme Court also addressed this claim.

Petitioner fatally shot the victim, Manuel Valverde Jr., in Petitioner's apartment in the early morning hours of May 7, 1999.  Petitioner does not deny shooting the victim but does claim that he acted in self-defense.

On May 6, 1999, the victim completed his second day of work at Days Inn around 6:30 PM.  The victim and a co-worker, Peter Majerkzyk, went to the hotel bar and began drinking. Several hours later, around 9:00 PM (or perhaps later), Petitioner finished his shift at Days Inn and joined the victim and Majerkzyk at the bar.  Majerkzyk introduced Petitioner and the victim to each other.

The three men drank together at the bar.  Majerkzyk testified that the Petitioner and victim were laughing together and appeared to have "hit it off".  The victim mentioned to Petitioner that he had been incarcerated in a California prison for attempted murder.  When the bar closed for the evening, Majerkzyk drove Petitioner and the victim to Petitioner's apartment, dropped them off and went home.

Around 2:00 AM on May 7,1999,  Petitioner fatally shot the victim in the kitchen of the apartment.  Petitioner left the apartment and Petitioner's aunt, who lived at the apartment, called the police.  When the police arrived, they found the victim's body on the kitchen floor.  Four

bullets had been fired.  Two of the bullets had struck the victim.  One bullet entered the victim's left side of his back and exited the right side of his back.  The second bullet hit victim in the head, behind the hairline, and caused his immediate death.  The police found one kitchen chair overturned and two shot glasses, one full and one empty, on the kitchen table.

About fifteen minutes later, Petitioner called the apartment from a nearby gas station.  The police spoke with the Petitioner who was cooperative.  The police arrested Petitioner at the gas station.

The testimony at trial painted two different pictures of what occurred at the apartment that night and early morning.  Petitioner testified that he and the victim continued to drink when they arrived at the apartment.  The two men sat at the same side of the kitchen table facing each other and drank shots of whiskey.

Petitioner testified that he mentioned he had a gun.  The victim wanted to see it so Petitioner went into the bedroom where his aunt was sleeping but where he kept his things.  He retrieved the gun and brought it to the kitchen.  He testified that it was fully loaded with five cartridges.  Petitioner unloaded the gun, put the cartridges on the table, and handed the gun to the victim.  The victim loaded one bullet, spun the cylinder, pointed the gun at Petitioner and pulled the trigger two times.  Nothing happened.  Petitioner asked the victim to put the gun down and the victim did so.

Petitioner testified that his younger cousin, who was sleeping in a second bedroom in the apartment, called out to the two men asking them to be quiet.  The victim responded to the cousin in a derogatory manner.  Petitioner told the victim he had "no right" to talk that way.  Petitioner's aunt then called out.  Petitioner picked up his gun, went into his aunt's room, and came back out

with the gun.  He testified that he had carried the gun into his aunt's room intending to put it away but forgot, returned with it to the kitchen and put the gun on the kitchen table.

Petitioner testified that the victim then picked up the gun and loaded the rest of bullets in the cylinder.  The victim threatened Petitioner telling him that if he did not keep his cousin and aunt quiet, the victim would do it for him.  The victim then placed the gun at Petitioner's temple.

Petitioner was scared and grabbed the gun away from the victim.  Petitioner put the gun down and was still standing when the victim started at him "like he was going to tackle" Petitioner.  Petitioner shot at the victim four times with the fourth bullet killing the victim instantly.  Petitioner testified that he shot the victim because he was scared the victim would take away the gun and use it on Petitioner or someone else in his family.

Petitioner testified that after the shooting his aunt came out of the bedroom screaming.  Petitioner testified that he went into his cousins' room and told his cousins he was sorry and not to go into the kitchen.  Petitioner then left the apartment telling his aunt to call the police.

The police interviewed Petitioner's aunt twice the morning of the shooting.  The aunt changed her story after the first interview.  The police also interviewed the younger cousin, a boy of fourteen, and an older girl cousin who was also sleeping in the apartment.  The aunt and the boy cousin also testified under oath at the grand jury proceeding.

At the trial, the aunt and the boy cousin testified that they had been asleep and only awoke when they heard gunshots.  Their trial testimony was inconsistent with their grand jury testimony.  The State played the taped grand jury testimony to the jury.  According to the grand jury testimony and in accordance with one of her interviews on the day of the shooting, the aunt testified that she was awake before the shooting.  She also testified that Petitioner came into the

bedroom and turned on the light.  As Petitioner rummaged through his belongings, the aunt saw Petitioner take out a small gun.  She got out of bed, shook his shoulders, and begged him to stop. After Petitioner shot the victim, the aunt called her mother who advised her to call the police.

The boy cousin's testimony from the grand jury hearing was that he saw Petitioner leave his aunt's bedroom with a small gun.  He heard his aunt tell Petitioner to put the gun away.  The cousin heard the Petitioner say, just before he shot the victim, "This is what you get for running your mouth."

The State also presented evidence at trial that the shot that entered the victim's back was inconsistent with Petitioner's self-defense claim that the victim lunged squarely at him.  Expert testimony indicated that Petitioner fired the shots from several feet away.  The State's theory was that Petitioner did not unload the gun before he handed it to the victim but loaded it himself in the aunt's bedroom before shooting the victim.  The State argued that victim did not threaten the Petitioner.

The jury was instructed on first degree murder, second degree murder, manslaughter and self-defense.  The jury returned a verdict of first degree murder.

20.  When the aunt and the boy cousin testified at trial, they both testified that they had been asleep during the shooting.  After the aunt testified, the State requested that her grand jury testimony be played to the jury.  The trial judge asked if Petitioner if he had any objection and after hearing a comment from Petitioner's attorney about impeachment, the State responded that it was going to offer the prior inconsistent testimony as substantive evidence.

21.  After the boy cousin testified at trial that he too had been asleep, the State requested that his grand jury testimony also be played to the jury.  After a short recess, Petitioner moved for

a mistrial arguing that these two witnesses may have exposed themselves to perjury charges without benefit of counsel. The trial judge determined that the question of perjury did not involve this trial or this Petitioner and denied the motion.

22. The New Mexico Supreme Court reviewed Petitioner's objections concerning the use of this grand jury testimony. The Supreme Court ruled that if the testimony comports with the requirements of New Mexico Rule of Evidence 11-801(D)(1)(a), the testimony or statements are not hearsay and may be relied upon by the jury as substantive evidence. Finding that the grand jury testimony of both the aunt and the boy cousin complied with the requirements of Rule 11-801(D)(1)(a), the Supreme Court held that the testimony was properly admitted at Petitioner's trial.

22. This claim involves the purported misinterpretation of a New Mexico Rule of Evidence and does not state a ground for habeas corpus relief. The Court finds that this claim fails to state a claim that Petitioner is in custody pursuant to a judgment of a state court that violates the Constitution of the United States.

<u>INSUFFICIENCY OF EVIDENCE CLAIM</u>

23. Petitioner's third claim is that there was insufficient evidence to support Petitioner's conviction of Murder in the First Degree. The Court interprets this claim as arguing that Petitioner's Fourteenth Amendment right to due process was violated because there was insufficient evidence presented at trial to support his conviction of Murder in the First Degree. He presented three related arguments in support of this claim, the same three arguments presented in his direct appeal to the Supreme Court of New Mexico. The Supreme Court reviewed the three

arguments in support of this claim and denied the claim on the merits.

24.  Clearly established federal law is that Petitioner has not suffered a violation of his right to due process when any rational trier of fact could have found proof of guilt of the crime charged beyond a reasonable doubt on the record evidence presented at trial. *Jackson v. Virginia*, 443 U.S. 307 (1979).  The issue is not whether the reviewing court would have found Petitioner guilty of first degree murder but whether any rational trier of fact could have found so based upon the evidence presented at trial. *Id.*, at 318-319.

25.  The Supreme Court of New Mexico has adopted and follows this federal law.  "[T]he test to determine the sufficiency of evidence in New Mexico, which is the same as enunciated in *Jackson*, is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 753 P. 2d 1314 (N.M. 1988).  The New Mexico courts follow a two step-process when reviewing a verdict for sufficient evidence.  First, the courts defer to the trial court's resolution of factual conflicts and derivable inferences.  Secondly, the courts make a legal determination whether the evidence thus viewed could support a finding of guilt of the crime of which the Petitioner was convicted. *State v. Coffin*, 1999-NMSC-038 ¶ 73, 128 N.M. 192, 991 P. 2d 477; (Answer, Exhibit G, decision of Supreme Court of New Mexico, page 11).

26.  The New Mexico Supreme Court found that two of the arguments - that the trial court failed to consider all the evidence at the close of the State's case and that the trial court erred when it did not grant the Petitioner's motion for a judgment notwithstanding the verdict - presented procedural issues which, in light of their review of the sufficiency of the evidence, were

implicitly denied.  The argument that the trial court erred in denying a motion for directed verdict at the close of the state's evidence was interpreted by the New Mexico Supreme Court as a claim that there was insufficient evidence to support Petitioner's conviction. (Answer, Exhibit G, pp. 10-12).

27.  Following its two step process, the Supreme Court resolved all factual conflicts in favor of the verdict and deferred to the implicit judgment of the fact finder on matters of credibility of witnesses and the relative weight to be given their testimony.  Reviewing the evidence, the Court found that the jury could have discredited Petitioner's testimony as self-serving and could have found from the grand jury testimony of Petitioner's aunt and cousin that Petitioner killed the victim as a result of a willful, deliberate and premeditated act. The Supreme Court found that there was sufficient evidence to support each element of the crime beyond a reasonable doubt. (Answer, Exhibit G, pp. 10-12).

28.  The New Mexico Supreme Court's decision on the issue of the sufficiency of evidence was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law.  The Petitioner has not established that his constitutional right to due process was violated and therefore is not entitled to habeas corpus relief on this claim.


<u>CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL</u>

29. Clearly established federal law holds that to establish ineffective assistance of counsel Petitioner must demonstrate that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Petitioner must show that his defense counsel's

performance was not simply wrong but was completely unreasonable. *Gonzales v. McKune*, 247 F. 3d 1066, 1072 (10th Cir. 2001). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland v. Washington*, 466 U.S. 668, 689 (1984), quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  To show prejudice Petitioner must show that but for his counsel's errors there was a reasonable probability that the outcome of his trial would have been different.  *Strickland*, *supra*, at 689.  A reasonable probability is one sufficient to undermine confidence in the outcome of the trial.  *Id.*

30.  Petitioner presented seven arguments to the state district court judge in support of his ineffective assistance of counsel claim.  The state court ruled on each argument on the merits with the exception of the issue of Petitioner's t-shirt. [2]  This Court's review of the six arguments supporting the ineffective assistance of counsel claim that were decided on the merits is limited then to whether the state court's decision was an unreasonable application of clearly established Supreme Court precedent.  *See, Gonzales v. McKune*, 247 F. 3d 1066, 1074 (10th Cir. 2001).

31.  Petitioner argues that he received ineffective assistance of counsel because his trial counsel failed to have independent ballistic and fingerprint tests run on the gun and tests to see whether the shell casings found in the apartment could have come from another gun.  His contention was that the tests on the gun could have raised a reasonable doubt whether others

---

[2] The New Mexico District Court Judge, as well as the counsel who briefed this issue for review by the Supreme Court of New Mexico, mistakenly thought Petitioner was referring to the victim's t-shirt.  Petitioner has made clear in this Application for the Writ of Habeas Corpus that he was referring to the t-shirt he was wearing on the night he shot the victim.

handled the gun.  The state district court judge rejected this argument writing, "The defendant's own testimony is that he fired the shots that killed the victim.  There was no testimony that the victim drew or fired a different weapon or even that there was another weapon at the scene." (Answer, Exhibit J, pp. 1-2).  The state judge found no prejudice to the Petitioner.

The testimony at the trial was that no usable fingerprints were recovered from the gun. (Answer, Exhibit F, p. 5  referencing the Record Proper).  Petitioner continues to argue however that his trial attorney should have ordered his own test of the gun.

Even if the victim's fingerprints had been found on the gun and that fact introduced into evidence, Petitioner is unable to establish that there was a reasonable probability that the outcome of the trial would have been different.  *Strickland, supra*.  As the Supreme Court wrote in its opinion, the testimony of the Petitioner that he placed a loaded gun within reach of the victim multiple times belies Petitioner's testimony that he was afraid of the victim. (Answer, Exhibit G, p. 12).   One of the State's theories was that the victim and the Petitioner may have handled the gun prior to the shooting but that is was not loaded.  The State contended that Petitioner loaded the gun when he went into his aunt's room, turned on the light and woke his aunt up.   If the gun carried the victim's fingerprints, the jury still could have found that evidence to be consistent with the State's theory of what occurred that night in the apartment.

Petitioner cannot establish prejudice to his defense such that but for his attorney's purported errors the outcome of the trial would have been different.  *See, Strickland, supra*. Therefore, the purported failure of the trial attorney to have independent tests run on the gun or shells does not amount to ineffective assistance of counsel.

32.  Petitioner's second argument is that he received ineffective assistance of counsel

because his trial attorney failed to obtain and use time cards from Days Inn to impeach witness Majerkzyk.  Apparently Petitioner claims that he did not join the victim and Majerkzyk at the hotel bar at 9:00 PM but somewhat later when he finished his work shift.

The state district court judge found this argument to be without merit.  "Mr. Majerkzyk was not a witness to the shooting; he testified only to matters that were not in dispute, that the defendant and the victim went to the defendant's house and that they had been drinking.  Even if counsel had undertaken to impeach this testimony, there is no reason to believe that it would have affected the outcome of the trial."  (Answer, Exhibit J, p.2).

The state court judge found that Petitioner had not shown that his trial attorney's decision had prejudiced the defense of the case.  The state court decision on this claim was a reasonable application of clearly established Supreme Court precedent.  *See, Strickland, supra*.  Therefore, this Court finds that the purported failure of the trial attorney to fail to obtain and use the time cards to impeach the witness Majerkzyk does not amount to ineffective assistance of counsel.

33.  Petitioner's third argument is that he received ineffective assistance of counsel because his attorney failed to move for a mistrial when the jury saw the victim's family and friends wearing red ribbons in the courtroom.  The trial judge removed the jury from the courtroom and told the family and friends to remove the red ribbons which they did.

The state court judge ruling upon the state application for habeas corpus found the argument to be without merit.  He wrote, "The Defendant points to no evidence of actual prejudice on the part of any juror.  He merely speculates that the jury might have been influenced."  (Answer, Exhibit J, p. 2).  Clearly established federal law requires that the Petitioner must demonstrate that his trial attorney's purported error prejudiced his defense.  *Strickland,*

*supra.*  He must establish that but for his trial attorney's errors, there was a reasonable probability that the outcome of the trial would have been different.

As the state court judge found, Petitioner failed to establish prejudice to his defense.  The state court decision on this claim was a reasonable application of established Supreme Court precedent.  Petitioner did not receive ineffective assistance of counsel because his trial attorney failed to move for a mistrial because the family and friends of the victim wore red ribbons in the presence of the jury.

34.  Petitioner fifth argument[3] is that he received ineffective assistance of counsel because his trial attorney failed to cross-examine the State's autopsy expert witness Dr. Jerri McLemore concerning her testimony that she did not see soot or stippling on the victim.  Petitioner's contention is that the victim was closer to him than the State's version of the scenario which placed the victim about several feet away.  The State supported its version of the facts with Dr. McLemore's testimony that she did not see soot or stippling on the victim.  Had the victim been closer to the Petitioner when shot, as Petitioner contends, the victim could have had soot or stippling on him.  Dr. McLemore did testify that the victim's hair could have interfered with her observation.

The state court judge rejected the Petitioner's argument writing, "The defendant fails to show that the absence of soot or stippling is inconsistent with his own testimony that he fired four shots at the victim from a distance of five or six feet.  The defendant fails to demonstrate that counsel's action prejudiced the defense."  (Answer, Exhibit J, p. 3).

As the state court judge found, Petitioner failed to establish prejudice to his defense.  The

---

[3] Petitioner's fourth argument is addressed in paragraph 37 of this opinion.

state court decision on this claim was a reasonable application of established Supreme Court precedent.  Petitioner did not receive ineffective assistance of counsel because his trial attorney failed to cross examine Dr. McLemore about the absence of soot or stippling on the victim.

35.  The Petitioner's sixth argument is that he received ineffective assistance of counsel because his trial attorney failed to call character witnesses on his behalf.  The state court judge found this argument to be without merit. "The defendant fails to show that any such witness was available or what the testimony would have been.  The defendant fails to demonstrate that counsel's actions prejudiced the defense.  Deciding what witnesses to call and what questions to ask is a matter of trial tactics and strategy."  (Answer, Exhibit J, p. 3).

The state court judge found that Petitioner failed to both establish prejudice to his defense or overcome the presumption that his trial attorney's strategy not to call character witnesses was sound trial strategy under the circumstances. *See, Strickland, supra.*  The state court decision was a reasonable application of established Supreme Court precedent.  Petitioner did not receive ineffective assistance of counsel because his trial attorney failed to call character witnesses at the trial.

36.  Petitioner's seventh argument is that he received ineffective assistance of counsel because his trial attorney failed to tender a jury instruction on the imperfect defense of voluntary intoxication.  The state court judge found this argument to be without merit. "The defense theory upon which the jury was instructed was self defense.  The defendant testified extensively concerning his alleged fear of immediate injury from the victim.  He did not testify at trial, nor does he claim in his petition, that he was too drunk to form a deliberate intention to take away the life of another. Counsel cannot be held ineffective for failure to tender an instruction that is

unsupported by the evidence." (Answer, Exhibit J, p. 3).

The state court held that Petitioner failed to overcome the presumption that his trial attorney's decision not to tender this jury instruction fell within an objective standard of reasonableness.  The state court decision was a reasonable application of established Supreme Court precedent.  *See, Strickland, supra*. Petitioner did not receive ineffective assistance of counsel because his trial attorney failed to tender a jury instruction on the imperfect defense of voluntary intoxication.

37.  The state court decision did not rule upon Petitioner's fourth argument in support of his claim of ineffective assistance of counsel.  Petitioner argued that his attorney's failure to test his own t-shirt or present it as evidence at his trial constituted ineffective assistance of counsel. The state court judge mis-read the argument as referring to the victim's t-shirt.[4]

Petitioner's shirt was taken as evidence on the night of the shooting by a Las Cruces policewoman because she observed bloodstains and what appeared to be some sort of brain matter on the shirt.  The shirt was not listed on either the State's or the defense' exhibit lists; nor was the shirt tested for blood or brain matter.  Petitioner's argument is that if brain matter was in fact on the shirt, this evidence could have been used to support his contention that the victim was close to Petitioner when Petitioner shot him.  The State contended that the victim was several feet

---

[4] Technically, one could argue that the Petitioner failed to exhaust this argument in the state courts below because he did not receive a ruling on the merits.  Normally, an application for a writ of habeas corpus must show that the claims within the application have been exhausted in state courts below before the federal courts may consider the claims on the merits.  28 U.S.C. §2254(b)(1)(A).  However, in this case, through no fault of his own, Petitioner was unable to obtain a ruling on the merits of this claim because the state district court judge mis-read the Petitioner's argument.  The AEDPA does allow this Court to rule on unexhausted claims if it is clear from the record that the claim will be denied. 28 U.S.C.§2254 (b)(2); *Hoxsie v. Kerby*, 108 F. 3d 1239 (10th Cir. 1997).

away when shot and that Petitioner was out of any danger range.  Petitioner contends that the victim was lunging at him and he was in actual danger. (Doc. No. 1, p.12).  Petitioner testified at his trial that the victim was five, six or seven feet from him when he shot the victim. (Answer, Exhibit E, p.4 referencing the Record Proper).

38. In the context of an ineffective assistance of counsel claim, the issue is whether the Petitioner's trial attorney's failure to test the shirt and, if relevant, introduce it into evidence amounted to a failure to conduct a reasonable investigation into the evidence, *see, e.g. Gonzales v. McKune*, 247 F. 3d 1066, 1074 (10th Cir. 2001), or if there is a reasonable probability that the introduction of such evidence would have changed the outcome of the trial.  *See, Strickland, supra.* To prevail on his ineffective assistance of counsel claim, Petitioner must establish both that his trial attorney's actions were unreasonable and that this purported deficient conduct was such as to probably change the outcome of the verdict.

If there was brain matter on the Petitioner's shirt, a fact which has not been established through testing[5], this Court is not able to conclude, based on the record evidence that was before the jury, that this additional evidence in support of Petitioner's testimony would have changed the outcome of the verdict.  The Supreme Court of New Mexico, reviewing the evidence on the sufficiency of the evidence claim, noted that the jury could have reasonably rejected the Petitioner's explanation that he acted in self-defense.  "Other than an overturned chair, there was little evidence of a struggle, and the fact that one shot entered the victim from behind is inconsistent with Defendant's testimony that the victim lunged at him.  Finally, Defendant placed

---

[5] Officer Gray testified at trial that trace evidence of blood or brain matter was found on the Petitioner's shirt. (Answer, Exhibit F, Answer Brief p. 5, referencing the Record Proper).

a loaded gun within reach of the victim multiple times, which argues against his testimony that he was afraid of the victim." (Answer, Exhibit G, p. 12).

Petitioner contends that brain matter and blood on Petitioner's shirt could have established that the victim was within close proximity to Petitioner when he was shot. But Petitioner already testified at trial that the victim was no more than seven feet from him and was lunging at him. (Answer, Exhibit E, p. 4, citing to the Record Proper and trial testimony). Likewise, the State presented evidence that the gunshots were fired from a least a few feet away. (Answer, Exhibit E, p. 8, citing to the Record Proper and trial testimony).

Even if the additional evidence of the Petitioner's shirt had been available to the jury, the Court cannot conclude that this evidence would have substantially changed the outcome of the trial. At most, it would have supported both the State's version of the facts, that the victim was a few feet away, and Petitioner's version of the facts, that the victim was within seven feet of him.

39. The Petitioner is unable to establish that the absence of this evidence, assuming it was in fact available, was sufficient to undermine the outcome of his trial. The failure of Petitioner's trial attorney to have the Petitioner's t-shirt tested for blood or brain matter does not amount to ineffective assistance of counsel because Petitioner is unable to establish prejudice to his defense.

CLAIM OF EXCULPATORY EVIDENCE

40. Lastly, Petitioner argues that the failure of the State to disclose the evidence of his t-shirt amounted to a deprivation of due process because the shirt was potentially exculpatory evidence. The state court decision below did not address this claim on the merits because it

thought Petitioner was referring to the victim's shirt.[6]

41.  Clearly established federal law is that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  In order to establish a *Brady* violation and thus a violation of his due process rights under the Fourteenth Amendment, the Petitioner must show: 1) the prosecutor suppressed evidence,; 2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and 3) the evidence was material.  *Gonzales v. McKune*, 247 F.3d 1066, 1075 (10th Cir. 2001).

The Petitioner has not been able to establish any of the three prongs of this claimed *Brady* violation.  There is no evidence that the prosecutor suppressed the t-shirt.  The only mention of the shirt was in the policewoman's report the night of the shooting and the officer's testimony of trace evidence on the shirt.  As previously discussed, assuming that testing the t-shirt would have shown the victim's blood and brain matter, the evidence is neither inculpatory or exculpatory. Lastly, the Petitioner is unable to establish that blood or brain matter on the Petitioner's shirt was material to his defense.  Petition admitted shooting and killing the victim.  The issue for the jury was whether this killing was lawful self-defense, in accordance with Petitioner's testimony, or was some degree of murder or manslaughter.

42.  The failure of the State to list or produce the Petitioner's t-shirt does not amount to a

---

[6] As in Petitioner's ineffective assistance of counsel claim regarding the failure to test or present his shirt into evidence, this claim was technically not exhausted in the state courts below. However, the AEDPA does allow this Court to rule on unexhausted claims if it is clear from the record that the claim will be denied. 28 U.S.C.§2254 (b)(2); *Hoxsie v. Kerby*, 108 F. 3d 1239 (10th Cir. 1997).

violation of Petitioner's due process rights. *Brady v. Maryland, supra.* The Petitioner is not entitled to the writ of habeas corpus on this claim.

<u>REQUEST FOR APPOINTMENT OF COUNSEL</u>

43. Petitioner has also requested that the Court appoint him counsel. (Doc. No. 3).

44. The Court considers several factors when considering whether to appoint counsel - "the merits of the litigant's claims, the nature of the factual issues raised by the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks v. Boergermann*, 57 F. 3d 978, 979 (10th Cir. 1995) (quoting *Williams v. Meese*, 926 F. 2d 994, 996 (10th Cir. 1991)).

45. Petitioner was represented by counsel at trial and on his direct appeal. Petitioner has represented himself during his habeas corpus proceedings in state and federal court.

46. Petitioner has been able to reasonably present his claim and supporting facts to this Court in his Petition for the Writ of Habeas Corpus. The claims presented were straightforward and many had been previously presented to the state court below in his appeal so the Court had benefit of those pleadings as well.

47. The Court has reviewed the merits of the Petition and recommends that the Petition for the Writ of Habeas Corpus be denied. The assistance of counsel for the Petitioner would not have materially altered the analysis of the Court or altered its recommendation.

48. The Court finds that the Petitioner has been able to present his case adequately without benefit of counsel and the appointment of counsel for the Petitioner would not have assisted the Court. Therefore, the Court recommends that Petitioner's Motion for the

Appointment of Counsel be DENIED.


## CONCLUSION

The Court recommends that the Petitioner's Application for a Writ of Habeas Corpus be DENIED because the Petitioner has failed to establish that he is in custody pursuant to a state court judgment in violation of the Constitution of the United States.


## NOTIFICATION

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN TEN (10) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the United States District Court, Pete V. Domenici United States Courthouse, 333 Lomas Blvd. NW, Albuquerque, NM 87102, pursuant to 28 U.S.C. §636 (b)(1).  A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE